## J. W. WELLS v. THE STATE.

### No. 7352.   Decided March 14, 1923.

### Rehearing Denied May 16, 1923.

**1.—Murder—Copy of Indictment.**

Where the indictment was filed on the fifth of May, 1922, and defendant was at large on bail, and on the thirtieth of said month he filed a motion demanding a certified copy of the indictment, which was thereupon delivered to the defendant, there was no reversible error.

**2.—Two Days Delay—Practice in Trial Court.**

The refusal to delay the trial under the circumstances, the court appears to have been justified under the authorities, Following Venn v. State, 86, Texas Crim. Rep., 633, and other cases.

**3.—Evidence—Hearsay—Practice in Trial Court.**

Where defendant complained that the State proved by hearsay evidence that the defendant had married a negro woman, but the record showed that defendant testified that he was a half-breed Indian, was divorced and thereafter had married a half-breed mulatto negro, this was not hearsay, and where the court had prepared a charge withdrawing this testimony, but counsel for defendant objected, there was no reversible error.

**4.—Rehearing—Evidence—Withdrawal by the Court.**

This court must adhere to its original opinion, that under the facts of this case the evidence with reference to marrying a negro woman was not of such harmful character that it could not have been withdrawn, and the appellant objecting to the withdrawal, there was no reversible error.

5.—Application for Second Motion for Rehearing.

Believing that the application for permission to file a second motion for rehearing presents nothing calling for favorable action by this court, the same is denied.

Appeal from the District Court of Fayette. Tried below before the Honorable M. C. Jeffrey.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

Opinion states the case.

*Norman G. Kittrell, H. E. Kahn, George Willrich, H. A. Townsend,* for appellant. On question of admitting evidence of defendant's marriage to negro woman; Darnell v. State, 126 S. W. Rep. 1126; McCandless v. State, 57 id., 672; Wellhausen v. State, 18 id., 300; Durham v. State, 76 id., 563; Henard v. State, 79 id., 810.

*R. Storey,* Assistant Attorney General, for State.

MORROW, PRESIDING JUDGE.—Conviction is for murder; punishment fixed at confinement in the penitentiary for a period of ten years.

Allen Smith was shot and killed. There were two wounds—one bullet entering on the left side, going through the body and coming out on the right side. If it entered the cavity, it was but slightly. The other bullet entered the left side of the small of the back, ranging downward and going through the upper part of the kidney.

There were several eyewitnesses. The appellant, Allen Smith and Leon Moore were gambling with cards. The game contemplated the dealing of five cards, one of them with the face down, the others exposed. Six cards were dealt to each player. The evidence is conflicting as to who dealt the cards. A controversy arose touching the effect of this error.

Moore's version is, in substance, this: When six cards had been dealt, Smith contended that neither could win the bet, but that they would have to "split the bet." Appellant sprang to his feet and said: "We will split it this way" and shot. Moore reached for his money and the appellant then shot him. After being shot, Smith laid down on the counter, and after shooting Moore, the appellant shot Smith again. The evidence showed that Smith had an automatic pistol, though Moore testified that neither he nor Smith drew a pistol or made any demonstration to do so.

The testimony of the State witness Rogers was in substance like that of Moore. Other witnesses testified that both Rogers and Moore were present. The State's witnesses were negroes.

The witness Poteet, a white man, was with the appellant. They

came together to the place where the gambling occurred. Poteet was hired by the appellant to bring him in a car. Poteet said that Smith dealt off too many cards. Wells (the appellant) claimed that he won the bet. Smith denied this and said he would take his money. Appellant then said that they would split the bet. Smith said: "Hell, no, you won't split nothing with me," and raised up to get his gun, that is, he reached back to his hip pocket, where the witness saw an automatic pistol. Smith got it out, and appellant shot twice in immediate succession. Both shots were fired while Smith was standing. Moore, in the meantime, was getting his gun. He shot at the appellant but did not hit him.

Appellant testified that he and Smith were betting. Smith was dealing and dealt himself six cards, and appellant said: "You have six cards; I win the money," to which Smith replied: "I will be damned if you win the money," and reached for his money. Appellant said that he knew he was hemmed in and must act promptly, so he reached for his pistol and fired twice. About the same time that he shot, Moore came around the corner with a pistol leveled at him and fired. The appellant returned the fire from a sitting position, then jumped up and raised the table and got out. He said that Smith had his gun in his hand and was pointing it at the appellant when the second shot was fired.

In Bill No. 1 complaint is made of the failure of the court to serve the appellant with a copy of the indictment. The indictment was filed May 5, 1922. Appellant was at large on bail and late in the afternoon of the 30th of May, he filed a motion demanding a certified copy of the indictment. The motion was heard on the next morning and a certified copy of the indictment was delivered to the appellant.

Appellant also sought a delay of two full days, which was denied. In refusing to delay the trial under the circumstances, the court appears to have been justified under the authorities. Venn v. State, 86 Texas Crim. Rep., 633; Revill v. State, 87 Tex. Crim. Rep., 1, 218 S. W. Rep., 1044.

In Bill No. 3 complaint is made that the State proved by hearsay evidence that the appellant had married a negro woman. Appellant testified that he was a half-breed Indian; that he came from Oklahoma; that he had been married but was divorced; that he had married Elnora Cochran, a half-breed mulatto negro. This was not hearsay. In the court's qualification to the bill of exceptions, it is shown that the court had prepared a paragraph of his charge withdrawing the testimony complained of from the consideration of the jury; that he exhibited the charge to the counsel for the appellant, who objected to having it read to the jury and because of the objection, the charge was not given. Granting that the testimony was not relevant, it is deemed not of such harmful character that it could not have been withdrawn by an instruction to the jury. The ap-

pellant having prevented the withdrawing of the testimony is not in an attitude. to complain.

No errors appearing in the record, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 14, 1923.

HAWKINS, Judge.—We have been unable to agree with appellant's contention that the admission of the evidence complained of in his Bill of Exceptions No. 3 was so inherently prejudicial that the same could not have been withdrawn. Many more cases than those cited by appellant may be found where reversals have been ordered because of the admission of improper testimony; equally as many may be cited where it has been held the withdrawal from the consideration of the jury of the evidence erroneously admitted will cure the error. In this respect we must consider each case upon the facts presented. The trial judge in the instant case concluded he had made a mistake in admitting the evidence; he tendered a charge in which he proposed to instruct the jury to disregard it, and was met with an objection to any effort to correct what he thought had been an error on his part. We adhere to our original opinion that in our judgment, under the facts of this case, the evidence was not of such harmful character that it could not have been withdrawn; furthermore, we cannot approve appellant's attitude in interposing an objection when the court offered to withdraw it, thereby preventing or at least discouraging an effort in his behalf, and yet strenuously insisting that the case ought to be reversed for an alleged error which he objected to the court attempting to correct.

The motion for rehearing is overruled.

*Overruled.*

OPINION ON APPLICATION FOR LEAVE TO FILE SECOND MOTION RE-HEARING.

May 16, 1923.

LATTIMORE, Judge.—Able counsel for appellant have filed a request for permission to submit a second motion for rehearing, supporting same by citation of opinions of this court as now constituted, and. as formerly adorned; and in forcible terms have invited again our review of the proposition that the trial court erred in admitting the statement of appellant on cross-examination that he was married to a mulatto negress, notwithstanding the fact that the learned trial court offered to instruct the jury not to consider such testimony,

which offer was rejected by appellant. It is not insisted that the matter is something which escaped our notice and was not passed upon by us in the original opinion and the motion for rehearing, but it is urged that our conclusion is so materially erroneous as that appellant should be granted permission to file a second motion for rehearing and have his case reversed and remanded.

In the bill of exceptions complaining of this matter it is not averred that appellant is a white man, and for aught shown by said bill, he may be the blackest of black men. Hundreds of cases from the foundation of this court down might be cited whose holding is clear and uniform that unless a bill of exceptions shows an error it will not be held by us as presenting one. In stating the grounds of his objection to the testimony, in said bill of exceptions, appellant stated that the testimony showed that he was an Indian. What the real facts in evidence on this point might be, is not shown in said bill. We are not required by our rules or the precedents to resort to the statement of facts in such case, but may rest our decision on the proposition that the trial court is presumed to know what the facts were, and to have ruled correctly; but eminent counsel have so earnestly urged the point that we have examined the statement of facts. Appellant testified on cross-examination that he was a half breed Indian, but there is no suggestion in his testimony as to what the other half was save the inferences from the fact of his associates. Beyond question he was engaged in a gambling transaction with a group of negroes, and according to his own testimony, in a place where negroes assembled for the purpose of gambling and to which he had been a number of times before. Other negroes were present besides those engaged in the gambling game with him. Appellant had been raised in Oklahoma and said that his wife was a mulatto negro woman. In order to base a claim of prejudice arising from certain testimony, there must be an affirmative showing of facts which would suggest the possibility of such prejudice. We do not find such suggestion in this bill of exceptions nor in this record. If the fact that appellant voluntarily associated himself with negroes in gambling would not prejudice the jury against him, nor the further fact voluntarily admitted that appellant had been convicted of bootlegging intoxicating liquor, we are totally unable to see how the fact that his wife was a negro woman could have any possible effect to prejudice the jury against him. Our perusal of the facts in evidence inclines us to the view that instead of the judgment reflecting any degree of prejudice, it shows a great degree of mercy on the part of the jury, for they inflicted upon him only a penalty of ten years in the penitentiary under testimony that might well support a much graver punishment.

Believing the application for permission to file a second motion for rehearing to present nothing calling for favorable action on our part, same will be denied.

*Application denied.*